IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-00941-CMA-BNB

FAÇONNABLE USA CORPORATION,
a Delaware corporation,
         Plaintiff,
v.
JOHN DOES 1–10,
all whose true names are unknown,
         Defendants.

---

**FAÇONNABLE USA'S RESPONSE
TO THIRD-PARTY SKYBEAM, INC.'S MOTION TO MODIFY THE APRIL 18, 2011
ORDER PERMITTING EXPEDITED DISCOVERY, AND FOR A PROTECTIVE ORDER**

---

Plaintiff Façonnable USA Corporation ("Façonnable") hereby opposes and submits its Response to Third-Party Skybeam, Inc.'s Motion to Modify the April 18, 2011 Order Permitting Expedited Discovery, and for a Protective Order (Dkt. #10).

**I.   INTRODUCTION**

Façonnable is a worldwide fashion brand specializing in fine tailored men's and women's clothing, and sells clothing at Nordstrom and its boutiques, and through Internet sales. Starting in March 2011, the Doe defendants, without any basis or justification in fact, started attacking the Façonnable brand by posting on Wikipedia that Façonnable and M1 Group are "strong supporter[s]" of Hezbollah and that consumers "should consider that their purchases of [Façonnable clothes] provide support for . . . terrorism." *See* Verified Complaint Ex. A (Dkt. #1). Façonnable is not a supporter of Hezbollah, but the postings were designed to appear as factual in nature so as to tarnish and disparage the Façonnable brand through the association with Hezbollah and

to dissuade customers from buying Façonnable clothes. Further, although Defendants' Internet Protocol ("IP") addresses appear with their postings, their names or organizations do not, making it impossible for consumers to analyze the source or legitimacy of the statements in considering whether to buy Façonnable clothes.

Façonnable attempted to stop and correct the postings, but Defendants repeated their conduct, re-posting and continuing to promote their disparaging statements. Faced with this repeated conduct, Façonnable filed its Verified Complaint seeking, among other things, injunctive relief to protect its brand and to stop the Defendants' conduct. With the lawsuit, Façonnable also sought expedited discovery of the Defendants' complete identities, so as to effectively pursue an injunction.

This Court granted Façonnable's Motion for Expedited Discovery, finding that, pursuant this District's law, Façonnable had demonstrated good cause to pursue expedited discovery. *See* Dkt. #7 ("Order"). Façonnable then served a subpoena *duces tecum* on Skybeam, Defendants' Internet Service Provider ("ISP"), seeking documents related to the Defendants' complete identities. *See* Ex. 1 ("Subpoena"). Façonnable also requested deposition dates for a Skybeam representative. *See* Ex. 2. Skybeam objected to the Subpoena and to Façonnable's request for deposition dates.[1]

Skybeam is not entitled to a protective order, and the Court's prior Order regarding discovery should stand as issued. First, the "good cause" standard applies

---

[1] When Skybeam's counsel informed the undersigned counsel that Skybeam planned to object to the Subpoena, Façonnable immediately began to prepare a motion to compel. When Skybeam filed its Motion for Protective Order, Façonnable was about to file its motion to compel and seek costs and fees in connection with that motion. If the Court denies Skybeam's Motion, Façonnable will move this Court to enter an order requiring Skybeam to pay Façonnable's costs and fees associated with this Subpoena dispute.

here, and Façonnable already has demonstrated that good cause exists for the discovery at issue. Second, Defendants' speech is not entitled to First Amendment protection because it is false. Third, Defendants are not true "anonymous" speakers and cannot have a reasonable expectation of privacy. Fourth, Skybeam lacks standing to assert Defendants' First Amendment rights. Next, regardless of the appropriate standard, Façonnable has demonstrated that discovery is appropriate, as it can sufficiently prove at least its claim for violation of the Colorado Consumer Protection Act. Finally, Façonnable is willing to confer with Skybeam concerning reasonable expenses associated with copying the relevant documents, once Skybeam has identified those expenses. For at least these reasons, the Court should deny Skybeam's Motion and enter an order requiring compliance with the Subpoena.

## II.   ARGUMENT

### A.   This Court Properly Granted Expedited Discovery

Skybeam has not demonstrated that the Order was improperly granted. Rather, this Circuit's precedent, the right to discovery under the Federal Rules, and the facts of this case continue to support the Order.

#### 1.   "Good Cause" Is the Applicable Discovery Standard

Rule 26(d) permits discovery to be conducted prior to a Rule 26(f) conference "when authorized by . . . court order." Fed. R. Civ. P. 26(d). This Court has uniformly granted requests for early discovery to obtain this type of information where, as here, good cause exists. *See, e.g.*, *20/20 Financial Consulting, Inc. v. John Does 1–5*, No. 10-cv-01006-CMA-KMT, 2010 WL 1904530 (D. Colo. May 11, 2010) (allowing

expedited discovery for the purpose of discovering defendants' identities in a case concerning false and defamatory statements by the defendants); *Warner Bros. Records Inc. v. Does 1–20*, CIV. 07-CV-01131-LTB-MJW, 2007 WL 1655365 (D. Colo. June 5, 2007) (allowing expedited discovery and Rule 45 subpoena on Qwest Communications Corp. to identify defendants). *See also Pod-Ners, LLC v. Northern Feed & Bean of Lucerne Ltd.*, 204 F.R.D. 675, 676 (D. Colo. 2002) (finding good cause existed for expedited discovery). Contrary to Skybeam's contentions, the *20/20 Financial Consulting* case and other cases relied on in Façonnable's Motion for Expedited Discovery were not "incorrect case law," but rather were the most applicable cases within this Circuit for the discovery sought by Façonnable.

Here, as in the *20/20 Financial Consulting* case, the Court recognized that good cause existed and permitted the limited discovery sought by Façonnable. *See* Dkt. #7. As this Court recognized, Skybeam was the only party that could provide Defendants' complete identities due to Skybeam's control over the IP addresses used by Defendants. Skybeam's critique of the *20/20 Financial Consulting* case—that it does not provide a basis for the discovery Order—is misplaced. While some courts have applied different standards and additional factors in defamation cases with anonymous online defendants, other courts—including those in the Tenth Circuit—have not. *See, e.g., Klehr Harrison Harvey Branzburg & Ellers, LLP v. JPA Dev., Inc.*, 0425 MARCH TERM 2004, 2006 WL 37020, at *8–*9 (Pa. Com. Pl. Jan. 4, 2006) (finding existing procedural rules adequate to protect anonymous poster's First Amendment rights). Here, the Court properly applied *20/20 Financial Consulting* in entering the Order.

### 2.     A Standard More Rigorous than "Good Cause" Would Violate the Rules of Civil Procedure

If a standard higher than "good cause" is imposed to obtain expedited discovery, a plaintiff would effectively be required to prove its case before obtaining the facts necessary to do so.  This would place a burden on the plaintiff that is contrary to the Federal Rules of Civil Procedure and the discovery process.  *See* Fed. R. Civ. P. 1 (stating the Rules "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding").

Without discovery, a party is at a significant disadvantage—if not in a position of impossibility—with respect to proving a prima facie case or otherwise demonstrating the merits of its case.  For example, it would be seemingly impossible for a plaintiff to prove elements of malice, knowledge, or intent of the defendant without first being able to identify the defendant.[2]  Such a rigorous approach to discovery would unfairly prejudice plaintiffs and would be contrary to this Court's rules.  In contrast, the "good cause" standard is sufficiently flexible to allow the Court to make a determination regarding discovery based on the circumstances of an individual case.

### 3.     The Rules Allow for Protecting Privacy During Discovery

To the extent the discovery at issue raises privacy concerns, the Rules contemplate sealing all or portions of the case, not preclusion of discovery altogether. Under Rule 26(c), a protective order is the proper mechanism for protecting privacy

---

[2] By way of further example, Fed. R. Civ. P. 56(c) requires "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

interests during discovery. Notably, obtaining a protective order requires "good cause," not proof of the merits of the case prior to discovery. Here, if the concern is that the Subpoena requires production of confidential information, the appropriate remedy is the issuance of a protective order, which Façonnable would support.

### 4. The Speech at Issue Does Not Warrant a Heightened Standard

The nature of Defendants' speech further supports this Court's application of the "good cause" standard. The First Amendment does not protect false speech. *See Herbert v. Lando*, 441 U.S. 153, 171 (1979) ("Spreading false information in and of itself carries no First Amendment credentials."); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974) ("[T]here is no constitutional value in false statements of fact"). Allegations that Façonnable is a "strong supporter" of Hezbollah and that consumers "should consider that their purchases of [Façonnable clothes] provide support for . . . terrorism" (the "Defamatory Statements") are not entitled to First Amendment protection because they are factually inaccurate.

Specifically, whether Façonnable supports a particular organization and whether any portion of its revenues are provided to that organization are factual issues that either can be proven true or, as in this case, false. Façonnable has verified that the Defamatory Statements are false. *See* Verified Complaint ¶ 10. Skybeam has not identified any evidence suggesting that the Defamatory Statements are true, or alleged the statements are non-factual or entitled to First Amendment protection. In fact, Skybeam admitted it does not know what type of speech is at issue here. *See* Ex. 3, at 3 (stating "the nature of defendants' speech is undetermined"). Accordingly, the weight

of the evidence demonstrates that the Defamatory Statements are false and, therefore, are not entitled to First Amendment protection.

### 5. The Doe Defendants Are Not Completely Anonymous and Lack an Expectation of Privacy

Defendants' own actions in connection with their postings on the Wikipedia website demonstrate that they are not completely anonymous, which further supports Façonnable's position that the Court's discovery Order should be upheld.

Defendants' IP addresses were not shielded from public disclosure since they declined to make their Defamatory Statements through Wikipedia accounts.[3]  *See* Verified Complaint ¶ 9; Ex. 4 a & b.  Defendants cannot reasonably expect complete anonymity since they failed to protect some identifying information—their IP addresses—from disclosure when posting the Defamatory Statements.  *Compare Lukowski v. County of Seneca*, 08-CV-6098, 2009 WL 467075, at *10 (W.D.N.Y. Feb. 24, 2009) *modified on reconsideration on other grounds*, 08-CV-6098, 2010 WL 1038607 (W.D.N.Y. Mar. 19, 2010) (differentiating scenario where "plaintiffs wanted to be completely anonymous" by posting not with IP addresses but with "handles" or anonymous usernames, showing a "subjective expectation of privacy").

Moreover, Skybeam's customers can have no reasonable expectation of privacy,

---

[3] Any Internet user can create a Wikipedia account.  Wikipedia requires only a user name and password in order to create the account.  *See* Ex. 5, excerpt from Wikipedia website for creating an account.  An email address is optional.  *Id.*  When Wikipedia users decline to edit a Wikipedia article through a Wikipedia account, the Wikipedia "revision history" link for each article shows the IP address associated with the user's edits.  *See* Verified Complaint ¶ 9; Ex. 4 a & b.

per their agreement with Skybeam.[4]  Specifically, Skybeam's service agreement expressly allows Skybeam to disclose the identity of a subscriber: "Skybeam reserves the right at all times to monitor, review, retain and/or disclose any information as necessary to satisfy any applicable law, regulation, legal process or governmental request."  Ex. 6, Skybeam Service Agreement, at 2, *available at* www.skybeam.com/ support.php?download=SKYBEAM-Service-Agreement-AUP-and-Terms.pdf (last visited April 21, 2011).[5]  Accordingly, Defendants could not reasonably expect that their complete identities would remain private when a subpoena has been served on their ISP, or that their ISP should maintain their complete anonymity in situations such as this.  *See, e.g.*, *Call of the Wild Movie, LLC v. Does 1–1,062*, CIV.A. 10-455 BAH, 2011 WL 996786, at *9 (D.D.C. Mar. 22, 2011) (finding alleged online copyright infringers had little to no expectation of privacy when warned about disclosure in the ISP's service agreement); *United States v. Hambrick*, 225 F.3d 656, 2000 WL 1062039, at *4 (4th Cir. 2000) (unpublished) (finding, in Fourth Amendment challenge, disclosure of non-content information to third party destroyed the privacy expectation that might have previously existed).  Moreover, Skybeam would not be—and does not claim it would be—liable to Defendants for disclosing their information in response to the Subpoena.

---

[4] While Tenth Circuit courts have yet to address the issue of privacy in the context of disclosing an ISP subscriber's identity, other courts have found that "the terms of service arrangement, if one exists, would be extremely helpful in analyzing the privacy interests at issue." *London-Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153, 180 (D. Mass. 2008).

[5] *See also* Ex. 7, Skybeam Business Agreement, at 2 ¶ 8 (stating "Skybeam will not use or disclose any personally identifiable information regarding Internet usage unless compelled by a court order or subpoena . . . ."), *available at* http://www.skybeam.com/support.php?download= SKYBEAM-Business-Agreement.pdf (last visited April 21, 2011).

### B. Skybeam Lacks Standing to Assert Defendants' Rights

Skybeam does not have standing to object to the disclosure of the Defendants' complete identities. To establish third-party standing, Skybeam must show both (1) an injury in fact and a close relation to the third party, and (2) a hindrance or inability of the third party to pursue his or her own claims. *See Terrell v. Immigration & Naturalization Service*, 157 F.3d 806, 809 (10th Cir. 1998). Skybeam has failed to meet that burden.

Here, there is no injury in fact that will result from Skybeam's disclosure of Defendants' complete identities because, among other reasons, Skybeam is not contractually bound to maintain the confidentiality of Defendants' identities. As noted above, Skybeam's agreement with its subscribers does not require—or even expressly allow—Skybeam to withhold information regarding subscribers. *See* Ex. 6. Moreover, Skybeam cannot be considered to have a "close relation" to Defendants, since it has not agreed to maintain Defendants' privacy or the confidentiality of their information. Finally, there is no hindrance or inability of the Defendants to pursue their own claims once they receive notification about the Subpoena from Skybeam. For at least these reasons, Skybeam lacks standing to assert the objections set forth in its Motion.[6]

---

[6] Skybeam cites two distinguishable cases outside this Circuit in support of its ISP standing argument. *See* Mot. at 3 n.3. Unlike Verizon or America Online, Skybeam has little to no duty or interest in the confidentiality of its subscribers as exhibited by the specific language of the subscriber's contract: "Skybeam reserves the right at all times to monitor, review, retain and/or disclose any information as necessary to satisfy any applicable law, regulation, legal process or governmental request." Ex. 6, at 3. Moreover, the potential for a "chilling effect" on speech is slim because the Defendants lacked an expectation of anonymity since they failed to log into a Wikipedia account to make the edits to the Façonnable and M1 Wikipedia pages. *See also Matrixx Initiatives, Inc. v. Doe*, 42 Cal. Rptr. 3d 79, 85 (Cal. Ct. App. 2006) (distinguishing the *AOL* and *Verizon* cases).

### C.     If a Heightened Standard Applies, Façonnable Meets It

While no courts in this Circuit have adopted a standard other than "good cause" to determine when an anonymous online speaker can be unmasked, Façonnable would meet a heightened standard, if so required.[7]  However, as an initial matter, if the Court determines the "good cause" standard does not apply, it is uncertain which heightened standard this Court would adopt, and even Skybeam declines to propose a standard that should be followed.  *See, e.g.*, Mot. at 11, 13 (advocating a higher standard but not proposing a particular standard for the Court to adopt).  However, under any standard this Court might adopt, Façonnable should meet the requisite showing.[8]

### 1.     Façonnable Can Prove its Claim for Violation of the Consumer Protection Act

Façonnable seeks to enjoin the Defendants from violating the Colorado Consumer Protection Act, C.R.S. § 6-1-101 *et seq*. (the "CCPA").  A person engages in a deceptive trade practice when, in the course of such person's business, vocation, or occupation, such person "disparages the goods, services, property, or business of another by false or misleading representation of fact."  C.R.S. § 6-1-105(1)(h).  To prove a private cause of action under the CCPA, a plaintiff must show that:

> (1) the defendant engaged in an unfair or deceptive trade practice; (2) the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) the plaintiff suffered injury in fact to a legally protected interest; and (5) the

---

[7] Due to space restrictions, Façonnable is addressing only claim for violation of the Colorado Consumer Protection Act.  Façonnable reserves the right to amend its response to address the prima facie case of its other claims.

[8] If the Court adopts a standard higher than "good cause" that differs from the factors addressed below, Façonnable will seek leave to supplement this response to address that new standard.

challenged practice caused the plaintiff's injury.

*Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998).

The Defamatory Statements disparaged Façonnable's products and business because they alleged that Façonnable was connected with Hezbollah.  *See* Verified Complaint ¶ 10 & Ex. A.  The Defamatory Statements were false and misleading because Façonnable is not affiliated with Hezbollah.  *See id.* at ¶¶ 10, 23.  The Defendants likely posted the Defamatory Statements in the course of their business or occupation because the statements appear to have been made by a competitor of Façonnable or someone associated with a competitor, since they were aimed at dissuading consumers from purchasing Façonnable products.  *See id.* at ¶ 10 & Ex. A.

The Wikipedia website on which Defendants published the Defamatory Statements is a popular, public website used by Internet users for researching factual information.  *See id.* at ¶ 13.  In fact, Wikipedia recently was named the 5th most-visited website on the Internet.  *See* Ex. 8.  A significant portion of purchasers and potential purchasers of Façonnable-branded products are Internet users, and many of them use the Internet in connection with making purchasing decisions.[9]  *See* Verified Complaint ¶ 13.  Those purchasers could easily be exposed to the Defamatory Statements, especially if they are searching the Wikipedia site directly or conducting a search for information on Façonnable or M1 Group through a search engine such as Google.[10]

---

[9] During discovery, Façonnable intends to serve discovery on Wikipedia seeking historical information on the number of visitors to its Façonnable and M1 Group articles.

[10] In searching the Google search engine for the terms "Façonnable" and "M1 Group," consumers are likely to access the Wikipedia articles since they appear near the top of the Internet search results for each term.  *See* Ex. 9 a & b, excerpts from Google searches for the

Due to the popularity of Wikipedia and the use of the site by Façonnable's target market, the posting of the Defamatory Statements has had, and will continue to have, a significant impact on consumers. *See Hall*, 969 P.2d at 235.

As a result of the publication of the Defamatory Statements, Façonnable has suffered threatened and real injury to its brand and reputation, and may also have suffered a financial impact on its product sales. Consumers persuaded by the Defamatory Statements may decline to buy Façonnable products due to concern that such purchases may fund Hezbollah. For at least these reasons, Façonnable has shown its claim for violation of the CCPA could survive dismissal or summary judgment.

    **2.**    **Other "Balancing" Factors Support a Determination that the Order Allowing Discovery was Proper**

        **a.**    **Façonnable's Document Requests Were Specific**

The documents Façonnable requested from Skybeam pertain to specific information directly relevant to Façonnable's claims.[11] These requests do not seek identifying information for numerous parties who did not make the Defamatory Statements. *See London-Sire Records*, 542 F. Supp. 2d at 178. Further, Skybeam has not objected to the scope of the requests set forth in the Subpoena and confirmed it is preserving documents requested in Requests 1–3 of the Subpoena.[12] *See* Ex. 3, at 1.

---

terms "Façonnable" and "M1 Group".

[11] Façonnable seeks: (a) information regarding the identities associated with the use of specific IP addresses at specific dates and times (Requests 1–3); (b) information regarding specific traffic on Wikipedia at certain dates and times, from certain IP addresses (Requests 3–6); and (c) any communications between Skybeam and the subscribers. *See* Ex. 1, at Ex. A.

[12] Skybeam claims that it does not have in its possession any documents relating to Requests 4–6 set forth in the Subpoena. *See* Ex. 3, at 1.

### b. Façonnable Lacks Other Means to Obtain the Subpoenaed Information

As the Court previously recognized, only Skybeam can match the IP addresses used by Defendants to their complete identities. *See London-Sire Records*, 542 F. Supp. 2d at 179. Without the ability to obtain identifying information from Skybeam, Façonnable will be unable to determine Defendants' identities.

### c. Façonnable Requires the Subpoenaed Information to Advance Its Claims

To pursue its claims and an injunction against Defendants, Façonnable must ascertain additional identifying information about Defendants other than their IP addresses. Otherwise, Façonnable will be unable either to seek redress for the harm it has incurred or prevent further harm to it from occurring because it not be able to serve process. *See London-Sire Records*, 542 F. Supp. 2d at 179.

### D. No Exceptional Circumstance Exist for Defendants to Participate Anonymously in this Case

Skybeam's position that the Court should allow time for Defendants to anonymously contest the disclosure of their identities is unsupported by this Circuit's law. In addition, anonymous participation in a lawsuit raises significant jurisdictional concerns and is contrary to the Federal Rules of Civil Procedure. *See Nat'l Commodity & Barter Ass'n, Nat'l Commodity Exch. v. Gibbs*, 886 F.2d 1240, 1245 (10th Cir. 1989) ("federal courts lack jurisdiction over the unnamed parties, as a case has not been commenced with respect to them"). *See also, e.g.,* Fed. R. Civ. P. 11(a) (filings with court must be signed by at least one attorney "or by a party personally if the party is unrepresented"). A party's anonymous participation is allowed only in "exceptional

circumstances" that involve "matters of a highly sensitive and personal nature, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity." *Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000) (requiring anonymous plaintiff to reveal his true identity); *Nat'l Commodity & Barter*, 886 F.2d at 1245 (preventing plaintiff from proceeding anonymously). Here, exceptional circumstances do not exist, especially since the speech at issue is not protected by the First Amendment.

In issuing the Order, this Court implicitly recognized that the Defendants would not participate in this discovery, since the purpose of the discovery was to identify Defendants. That order should stand, as there are no exceptional circumstances that allow for Defendants' participation in this suit until their complete identities are known.

### E.     Skybeam's SLAPP Allegations are Unsupported and Meritless

Skybeam's allegation that this may be a Strategic Lawsuit Against Public Participation ("SLAPP") is illustrative of Skybeam's overall approach in objecting to the Subpoena, which has been to raise issues and claims that that are not based on the law followed by this Court. There is simply no basis for amending the Order to require Façonnable to demonstrate that this case is not a SLAPP. First, as Skybeam admits, Colorado does not have an anti-SLAPP statute. *See* Mot. at 11. Second, this is not "sham" litigation or a meritless case brought merely for purposes of harassment. Rather, Façonnable is concerned with the financial implications of the Defendants' Defamatory Statements, as explained above, and seeks injunctive relief to prevent the Defamatory Statements from causing further harm to Façonnable's business and

reputation. Third, the Defamatory Statements are not entitled to First Amendment protection. Skybeam's insinuation that Façonnable's suit may be suppressing the valid exercise of free speech is groundless and offensive, particularly considering Skybeam's admission that it does not even know what type of speech is at issue. *See* Ex. 3, at 3.

### F. Skybeam's Request for Costs Is Not a Reasonable Basis for a Protective Order

Façonnable does not object to paying reasonable and legitimate expenses associated with Skybeam's document production. However, Skybeam has not identified any specific expenses it incurred in connection with preparing the subpoenaed documents for production. Until Skybeam identifies those expenses, Façonnable cannot be expected to commit to the payment of those expenses. Accordingly, a protective order on this basis is premature.

## III. CONCLUSION

Façonnable respectfully requests that the Court deny Skybeam's Motion to Modify the April 18, 2011 Order Permitting Expedited Discovery, and For a Protective Order, and deny Skybeam's request for costs and fees associated with such Motion.

Dated this 16th day of May, 2011.

s/Peter J. Korneffel, Jr.
Peter J. Korneffel, Jr., #19836
Ashley Krause, #33932
Brownstein Hyatt Farber Schreck, LLP
410 Seventeenth Street, Suite 2200
Denver, Colorado 80202-4432
Phone: 303.223.1100
pkorneffel@bhfs.com
akrause@bhfs.com

ATTORNEYS FOR FAÇONNABLE USA CORPORATION

## CERTIFICATE OF SERVICE

A copy of the foregoing document was filed electronically with the Clerk of the District Court on the 16th day of May 2011, and served via ECF upon the following:

Counsel for Skybeam, Inc.:

John D. Seiver
Davis Wright Tremain LLP
1919 Pennsylvania Avenue, NW, Suite 800
Washington, D.C. 20006-3401
johnseiver@dwt.com

                                             s/Peter J. Korneffel, Jr.