IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No.  11-cv-00941-CMA-BNB

FACONNABLE USA CORPORATION, a Delaware corporation,

Plaintiff,

v.

JOHN DOES 1-10, all whose true names are unknown,

Defendants.

_____

**ORDER**
_____

This matter arises on **Skybeam, Inc.'s Motion to Modify the April 18, 2011 Order Permitting Expedited Discovery, and for a Protective Order** [Doc. # 9, filed 4/29/2011] (the "Motion for Protective Order"), which is DENIED.

The action was commenced when Faconnable USA Corporation ("Faconnable") filed a Verified Complaint [Doc. # 1, filed 4/7/2011] against John Doe defendants 1-10.  The Complaint alleges that the John Doe defendants violated the Lanham Act and the Colorado Consumer Protection Act and committed trade libel/commercial disparagement in connection with anonymous internet postings.  In particular, it is alleged:

> In the past two months, one or more anonymous Internet users have edited the Wikipedia articles for M1 Group and Faconnable by adding false and misleading statements that M1 and Faconnable are supporters of Hezbollah. . . .  For example, on March 1, 2011, an anonymous Internet user added the following statements to the Faconnable article on Wikipedia:

> • "M1 Group is purported to be a strong supporter of Hezbollah . . ."
>
> • "Customer's of [Faconnable] should consider that their purchases provide support for an organization identified by the US government as a supporter of terrorism."

Complaint [Doc. # 1] at ¶10. Hezbollah is identified by Faconnable as "a Shiite Islamist militia and political party based in Lebanon that has been designated by the U.S. State department as a terrorist organization." Id. at p. 4 n. 1. The Complaint contains a description of the damages suffered by Faconnable as a result of the anonymous postings, as follows:

> As a proximate result of Defendants' actions, Faconnable USA has suffered and will continue to suffer damage and loss, in an amount to be determined at the time of trial. Defendants' actions have caused and will continue to cause irreparable harm to Faconnable USA for which there is no adequate remedy at law.

Id. at ¶¶ 16, 21, and 25.

Simultaneous with the filing of its Complaint, Faconnable filed a Motion for Expedited Order Authorizing Discovery [Doc. # 2, filed 4/7/2011] (the "Motion to Expedited Discovery"). The Motion for Expedited Discovery sought an order allowing Faconnable to conduct immediate discovery "from Skybeam and other Internet service providers or website operators who may have information about the identity of Defendants." Id. at ¶5. The Motion for Expedited Discovery also stated that "[o]nce the Defendants' identities are determined, Faconnable USA will amend its Verified Complaint to identify the actual names of the Defendants." Id. at ¶6.

Faconnable relied on 20/20 Financial Consulting, Inc. v. John Does 1-5, 2010 WL 1904530 (D. Colo. May 11, 2010), and argued that expedited discovery to determine the identity of anonymous John Doe defendants under these circumstances is properly allowed on a showing of good cause. Motion for Expedited Discovery [Doc. # 2] at ¶6. Based on the record then

before me, I granted the Motion for Expedited Discovery, see Order [Doc. # 7, filed 4/18/2011], finding that it was supported by good cause.

I was unaware of a substantial body of law in other jurisdictions addressing First Amendment concerns and the issuance of John Doe subpoenas like those requested here. See generally Matthew Mazzotta, *Balancing Act: Finding Consensus on Standards for Unmasking Anonymous Internet Speakers*, 51 B.C. L. REV. 833 (May 2010)(addressing the various standards formulated by courts in determining whether to issue subpoenas "unmasking" anonymous internet posters, including the balancing of First Amendment rights of the anonymous speakers against the strength of the plaintiff's claim and the need for unmasking, and collecting cases); Ashley I. Kissinger and Katharine Larsen, *Untangling the Legal Labyrinth: Protections for Anonymous Online Speech*, 13 No. 9 J. INTERNET L. 1 (March 2010)(same); Stephanie Barclay, *Defamation and John Does: Increased Protections and Relaxed Standing Requirements for Anonymous Internet Speech*, 2010 B.Y.U. L. REV. 1309 (2010)(same); Charles Doskow, *Peek-A-Boo I See You: The Constitution, Defamation Plaintiffs, and Pseudonymous Internet Defendants*, 5 FLA. A&M U. L. REV. 197 (Spring 2010) (same); Nathaniel Gleicher, *John Doe Subpoenas: Toward a Consistent Legal Standard*, 118 YALE L. J. 320 (November 2008); and Victoria Smith Ekstrand, *Unmasking Jane and John Doe: Online Anonymity and the First Amendment*, 8 COMM. L. & POL'Y 405 (Autumn 2001) (same).

I am informed that on April 19, 2011, Faconnable served a subpoena duces tecum on Skybeam, pursuant to my Order, commanding that Skybeam produce personally identifiable information about Skybeam's subscribers who are the alleged anonymous internet posters. Skybeam seeks relief from my Order and its obligation to respond to the subpoena.

In a recent decision from the District of Utah, the court confronted a request for early discovery similar to the one at issue here and quashed the subpoena, stating:

> A growing number of courts have recognized that civil subpoenas seeking information regarding anonymous speakers raise First Amendment concerns. If Internet users could be stripped of their anonymity by a civil subpoena enforced under the liberal rules of civil discovery, this would have a significant chilling effect on Internet communications and thus on basic First Amendment rights.
>
> Accordingly, courts have outlined strict rules for allowing a subpoena that has the effect of unmasking the identity of anonymous online speakers. Such rules serve the important purpose of assessing the viability of a plaintiff's claims before casting aside the speaker's anonymity, which once lost cannot be recovered. Although courts have adopted slightly different versions of the test, the case law has begun to coalesce in <u>Dendrite</u> [Int'l, Inc. v. Doe, 775 A.2d 756 (N.J. Super. Ct. App. Div. 2001)]. The <u>Dendrite</u> court held that "[i]n addition to establishing that its action can withstand a motion to dismiss . . ., the plaintiff must produce sufficient evidence supporting each element of its cause of action, on a prima facie basis, prior to a court ordering the disclosure of the identity of the unnamed defendant." 775 A.2d at 760.

<u>Koch Industries, Inc. v. John Does, 1-25</u>, 2011 WL 1775765 *10 (D. Utah May 9, 2011) (internal quotations and citations omitted except as noted).

Similarly, in <u>Salehoo Group, Ltd. v. ABC Co.</u>, 722 F. Supp 2d 1210 (W.D. Wash. 2010), the court stated:

> Subpoenas seeking the identity of anonymous individuals raise First Amendment concerns. With the expansion of online expression, the use of subpoenas to unmask anonymous Internet speakers in connection with civil lawsuits is on the rise. The use of subpoenas in the context of the Internet raises serious concerns because it threatens to cause a significant chilling effect on Internet communications and thus on basic First Amendment rights.
>
> In recent years, courts have been called on to balance one

> individual's First Amendment interests in anonymous Internet speech against another individual's interests in addressing the harm caused by tortious or actionable speech. . . .
>
> The case law, though still in development, has begun to coalesce around the basic framework of the test articulated in Dendrite Int'l, Inc. v. Doe No. 3, 342 N.J.Super. 134, 775 A.2d 756 (N.J.Super.Ct. App. Div. 2001). . . .  The Dendrite court . . . held that a plaintiff seeking such discovery must (1) give notice; (2) identify the exact statements that constitute allegedly actionable speech; (3) establish a prima facie cause of action against the defendant based on the complaint and all information provided to the court; and (4) "produce sufficient evidence supporting each element of its cause of action, on a prima facie basis, prior to a court ordering the disclosure of the identity of the unnamed defendant." Id. at 760.  Additionally, if the plaintiff makes out a prima facie cause of action, the court must (5) "balance the defendant's First Amendment right of anonymous free speech against the strength of the prima facie case presented and the necessity for the disclosure of the anonymous defendant's identity to allow the plaintiff to properly proceed." Id. at 760-61.

Salehoo, 722 F. Supp. 2d at 1214.

The justification for added levels of scrutiny before allowing a subpoena designed to reveal the identity of an anonymous internet poster has been expressed as follows:

> The free exchange of ideas on the Internet is driven in large part by the ability of Internet users to communicate anonymously.  If Internet users could be stripped of that anonymity by a civil subpoena enforced under the liberal rules of civil discovery, this would have a significant chilling effect on Internet communications and thus on basic First Amendment rights.

Doe v. 2TheMart.com Inc., 140 F. Supp. 2d 1088, 1093 (W.D. Wash. 2001).

Neither the Supreme Court nor the Tenth Circuit Court of Appeals has addressed the issue of John Doe subpoenas in the context of anonymous internet posters.  The Ninth Circuit appears to be the only circuit court of appeals to confront the issue.  In In re Anonymous Online Speakers, 2011 WL 61635 (9th Cir. Jan. 7, 2011), a case apparently involving commercial

5

speech, that court held:

> A number of courts have required plaintiffs to make at least a prima facie showing of the claim for which the plaintiff seeks the disclosure of the anonymous speaker's identity.
>
> \* \* \*
>
> Interestingly, in each of these cases, the initial burden rests on the party seeking discovery and requires varying degrees of proof of the underlying claim.
>
> \* \* \*
>
> The district court here appropriately considered the important value of anonymous speech balanced against a party's need for relevant discovery in a civil action. It also recognized the "great potential for irresponsible, malicious, and harmful communication" and that particularly in the age of the Internet, the "speed and power of internet technology makes it difficult for the truth to 'catch up' to the lie."
>
> Against this backdrop, the district court applied [Doe v.] Cahill, [884 A.2d 451 (Del. 2005)], which elevates the bar to disclosure to the highest level. Because Cahill involved political speech, that court's imposition of a heightened standard is understandable. In the context of the speech at issue here balanced against a discretionary discovery order under Rule 26, however, Cahill's bar extends too far. . . . [W]e suggest that the nature of the speech should be the driving force in choosing a standard by which to balance the rights of anonymous speakers in the discovery disputes.

2011 WL 61635 \*\*5-6.

Notwithstanding the apparent "coalescence" of courts around a heightened standard resembling the Dendrite test, a few courts and commentators have declined to adopt a new or different discovery standard to accommodate anonymous internet speech. See Klehr Harrison Harvey Branzburg & Ellers, LLP v. JPA Development, Inc., 2006 WL 37020 (Pa. Comm. Pl. Jan. 4, 2006); Michael S. Vogel, *Unmasking "John Doe" Defendants: The Case Against Excessive Hand-Wringing Over Legal Standards*, 83 OR. L. REV. 795 (Fall 2004); Doskow, 5 Fl. A&M U. L. REV., supra. According to Professor Vogel:

> Though well intentioned, the rush to apply new standards should
> be slowed.  The threat to core First Amendment free speech rights
> from too readily identifying anonymous speakers is real, and
> should be taken seriously by the courts.  At the same time,
> however, the new standards offer little real protection for
> anonymous speech beyond what courts can provide under existing
> rules.  In exchange for this limited benefit, however, the grafting of
> new tests onto existing rules threatens to compromise the values
> protected by other constitutional provisions, including due process,
> equal protection, and the right to trial by jury.
>
> \* \* \*
>
> At best, new judicially-created tests are confusing and
> unnecessary, accomplishing the same results but at the cost of
> uncertainty and complications.  At worst, by detaching the analysis
> from the moorings of ordinary procedure, the glitter of a new test
> may divert judges from nuanced inquiry responding to the case's
> particular circumstances in favor of application of the test for its
> own sake, without consideration of whether the test is well-tailored
> to the needs of that case.

Vogel, supra, at 801-02, 857.  He argues, instead, that existing procedures, applied with a heightened sensitivity to any First Amendment implications, is the correct approach.  Id. at 855-57.  I agree.

Discovery decisions, including an order authorizing subpoenas for expedited discovery, raise familiar issues.  In general, discovery is allowed only after an action is commenced and the parties have completed a Rule 26(f) planning conference.  Fed. R. Civ. P. 26(d)(1).  Expedited discovery may be taken prior to the Rule 26(f) conference only on stipulation or by court order. Id.  Discovery is limited to nonprivileged matters that are relevant to any party's claims or defenses or that appear reasonably calculated to lead to the discovery of admissible evidence, "including the . . . identity and location of persons who know of any discoverable matter."  Fed. R. Civ. P. 26(b)(1).  A court may issue an order to protect a party or person from discovery that annoys, embarrasses, oppresses, or creates undue burden or expense.  Fed. R. Civ. P. 26(c)(1).

Neither the Constitution, the Federal Rules of Civil Procedure, nor any decision of the Supreme Court has imposed special discovery rules in cases implicating the First Amendment. Vogel, 83 OR. L. REV., supra, at 824.  To the contrary, in Bruno & Stillman, Inc. v. Globe Newspaper Co., 633 F.2d 583 (1st Cir. 1980), the First Circuit Court of Appeals considered discovery in connection with the analogous situation of a request to compel disclosure of a reporter's confidential sources.  The court said:

> [W]e find that the "special procedures" suitable for this case to be the application of Fed. R. Civ. P. 26 ("General Provisions Governing Discovery") with a heightened sensitivity to any First Amendment implication that might result from the compelled disclosure of sources.  The conflicting considerations are contained in the language of the Rule.  On the one hand, parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter.  It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.  On the other hand, the court may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . .

Id. at 596-97 (internal quotations and citations omitted).  The court identified factors to be considered by trial courts in making discovery rulings, including: (1) the relevance of the requested information; (2) whether the plaintiff's underlying claim is frivolous and a "pretense for using discovery powers in a fishing expedition"; (3) the need for confidentiality; and (4) the availability of alternative procedures that accommodate the plaintiff's needs while maintaining anonymity.  Id. at 597-98.  In the final analysis, the court said:

> We deliberately refrain from further categorizing with any precision what inquiries should be made by the court or in what sequence.  The task is one that demands sensitivity, invites flexibility, and defies formula.  While obviously the discretion of the trial judge has wide scope, it is a discretion informed by an

> awareness of First Amendment values and the precedential effect
> which decision in any one case would be likely to have.

Id. at 598.

The Supreme Court has repeatedly recognized the "freedom to publish anonymously." McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 342 (1995), citing Talley v. California, 362 U.S. 60, 64 (1960). The right to speak anonymously "extends to speech via the Internet." 2TheMart.com, 140 F. Supp. 2d at 1092. However, the right to speak, anonymously or otherwise, is not unlimited. In re Anonymous Online Speakers, 2011 WL 61635 at *2. The degree of protection afforded speech depends on its nature--e.g., political, commercial, defamatory, etc. Id.

In American Target Advertising, Inc. v. Giani, 199 F.3d 1241, 1247 (10th Cir. 2000), the Tenth Circuit Court of Appeals held:

> Content neutral regulation of protected speech is subject to an
> intermediate level of scrutiny. The principal inquiry in
> determining content neutrality is whether the government has
> adopted a regulation of speech because of disagreement with the
> message it conveys. A measure designed not to suppress the
> expression of unpopular views but rather to control the secondary
> effects of speech will generally be deemed content neutral.

Giani involved a challenge to the constitutionality of a Utah statute that required professional fundraisers to meet certain registration and disclosure requirements. The circuit court found that the statute was designed to facilitate oversight of charitable fundraisers and was content neutral. Consequently, to withstand First Amendment scrutiny, the state was required to demonstrate that the statute "(1) serves a substantial governmental interest and (2) is 'narrowly drawn' to serve that interest 'without unnecessarily interfering with First Amendment freedoms,'" citing Village of Schaumburg v. Citizens for a Better Env't, 444 U.S. 620, 636-37

(1980).

Not only statutes, but also court orders, "even when issued at the request of a private party in a civil lawsuit, constitute[] state action and as such [are] subject to constitutional limitations." 2TheMart.com, 140 F. Supp. 2d at 1092.

Applying these considerations to the discovery at issue here leads me to conclude that the Motion to Quash must be denied.

First, the identity of potential defendants in an action alleging statutory violations and tortious misconduct in connection with anonymous internet postings certainly is relevant to the plaintiff's claims. Absent the ability to identify the alleged malefactors, Faconnable is left with no ability to vindicate its rights, and legal process is rendered meaningless.

Faconnable's claims appear to be adequately stated and to contain sufficient factual detail, verified by the plaintiff's agent, to state plausible claims for relief. Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008), applying Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). See Ashcroft v. Iqbal, --U.S.--, 129 S. Ct. 1937 (2009). In this regard, the plaintiff has identified (and quoted) the exact statements that it alleges are actionable, Complaint [Doc. # 1] at ¶10, and has pled in a verified complaint subject to Fed. R. Civ. P. 11 and the restraints against misuse of legal process that the statements are "false and misleading." Id. Based on these facts Faconnable asserts, among others, a claim for violation of the Lanham Act, 15 U.S.C. § 1125(a), which imposes liability on any person who "in connection with any goods . . . uses in commerce any . . . false or misleading description of fact, or false or misleading representation of fact, which--(**A**) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person. . . ." Faconnable also alleges a

violation of the Colorado Consumer Protection Act, section 6-1-101, *et seq*., C.R.S., which prohibits a person from disparaging "the goods, services, property, or business of another by false or misleading representation of fact. . . ." Section 6-1-105(1)(h), C.R.S. Faconnable's factual allegations appear to sufficiently state plausible claims for relief and to demonstrate that those claims are not frivolous or a pretense for using discovery powers in a fishing expedition.

In Bruno v. Stillman, 633 F.2d at 597-98, the First Circuit identified as a consideration the need for confidentiality. In Dendrite, 775 A.2d at 760, and the cases adopting a Dendrite-style test, the courts have included as a condition for obtaining a John Doe subpoena the requirement that the plaintiff "notify the anonymous posters that they are the subject of a subpoena or application for an order of disclosure, and withhold action to afford the fictitiously-named defendants a reasonable opportunity to file and serve opposition to the application." Id. See Gleicher, 118 YALE L. J. at 343-50 (identifying notice to anonymous posters as a common requirement in the John Doe subpoena cases and discussing the specific requirements of that notice). In this case, however, neither consideration requires prolonged analysis.

Rule 45, Fed. R. Civ. P., does not require a party, subject to a subpoena commanding the disclosure of information about another person or entity, to give notice to the third party, nor does it prohibit such notice. A subpoenaed party frequently will alert a customer that it has been served with such a subpoena, either as part of its customer relations or pursuant to a contractual obligation.

Here, the undisputed evidence establishes that Skybeam's Service Agreement [Doc. # 14-7] with the alleged anonymous posters expressly allows Skybeam to disclose the identity of its subscribers pursuant to "legal process" and does not require Skybeam to give its subscribers

advance notice when it intends to make such a disclosure. Specifically, the Service Agreement provides:

> Skybeam service may only be used for lawful purposes and in a manner consistent with the rights of other parties. Skybeam Services shall not be used in a manner which would violate any law or infringe on any copyright, trademark, trade secret, right of publicity, privacy right or any other right of any person or entity, or for the purpose of transmitting or storing material which is obscene, libelous or defamatory. . . .
>
> Skybeam will cooperate fully with legal authorities in the investigation of suspected crimes or service abuses.

Service Agreement [Doc. # 14-7] at "Lawful Use." In addition:

> Skybeam reserves the right at all times to monitor, review, retain and/or disclose any information as necessary to satisfy any applicable law, regulation, legal process ro governmental request.

Id. at "Acceptable Use Policy (AUP)."

There is no reason for a court, presented with a complaint asserting a plausible claim for relief, to take greater care than has been taken by the anonymous poster to protect his anonymity or to assure prior notice of a subpoena.

A blanket protective order to prevent dissemination of an anonymous poster's identity beyond those with a legitimate need to know and for use in connection with a particular lawsuit is available to prevent widespread disclosure of the identity and any injurious consequences associated with that disclosure.

Under the well-known discovery rules applicable in federal court, Faconnable has established that it is entitled to take discovery to identify the identities of the anonymous posters. The final requirement, however, is to apply those standards with a heightened sensitivity to the First Amendment implications.

Here, as in Giani, 199 F.3d at 1247, the burden placed on the anonymous speaker's First Amendment exercise is content neutral. The subpoena "is not designed to suppress the expression of unpopular views," but instead facilitates oversight of internet speech in a content neutral manner. The discovery is intended merely to allow an allegedly injured victim to seek relief against anonymous internet posters for apparently actionable speech.

Giani is consistent with the Supreme Court's decision in Buckley v. American Constitutional Law Foundation, Inc., 525 U.S. 182 (1999). There, the Court confronted the constitutionality of a Colorado requirement that petition circulators (1) wear badges identifying themselves by name and (2) include on each petition section submitted to the State the circulator's name, address, and signature. The state interest allegedly promoted by the badge and reporting requirements was to "polic[e] lawbreakers among petition circulators." Id. at 196. The Supreme Court invalidated the badge requirement but affirmed the requirement that each petition section include an affidavit containing the circulator's name, address, and signature, noting:

> Unlike a name badge worn at the time a circulator is soliciting signatures, the affidavit is separated from the moment the circulator speaks. . . . [T]he name badge requirement forces circulators to reveal their identities at the same time they deliver their political messages; it operates when reaction to the circulator's message is immediate and may be the most intense, emotional, and unreasoned. The affidavit, in contrast, does not expose the circulator to the risk of "heat of the moment" harassment.
> \* \* \*
> The injury to speech is heightened for the petition circulator because the badge requirement compels personal name identification at the precise moment when the circulator's interest in anonymity is greatest.

Id. at 198-99 (internal quotations and citations omitted).

Here, as in <u>Buckley</u>, allowing a John Doe subpoena does not constitute a blanket prohibition against anonymous speech. In addition, the disclosure of anonymous posters' names pursuant to a John Doe subpoena is separated in time from the moment of the speech. Consequently, there is no immediate chilling effect on the anonymous speech, and the overall effect of the subpoena on that speech, if any, is minimized. The post-speech disclosure required by a John Doe subpoena, like the affidavit requirement approved in <u>Buckley</u>, is fully responsive to the governmental interest to allow an injured party to identify an anonymous poster to vindicate its rights, if appropriate, in a narrowly tailored manner that does not unreasonably interfere with First Amendment exercise.

Applying <u>Buckley</u> and <u>Giani</u> to the facts presented here, the First Amendment requires that I assure that the disclosure of the anonymous posters' identities (1) serves a substantial governmental interest and (2) is narrowly tailored to serve that interest without unnecessarily interfering with First Amendment freedoms.

The right of a plaintiff asserting a plausible claim for relief to a meaningful opportunity to vindicate its rights and recover damages inflicted by anonymous internet posters is a substantial governmental interest.

An order allowing a subpoena directed at revealing the identities of anonymous posters is narrowly tailored to serve that substantial interest without undue burden on the First Amendment where (1) the information is otherwise discoverable in a pending action and the requirements set out in the federal rules for obtaining the discovery have been satisfied; (2) the plaintiff has stated a plausible claim for relief; and (3) the rights of the anonymous posters to prior notice of the subpoena, if any, have been honored.

Faconnable has met the requirements for discovery imposed by the Federal Rules of Civil Procedure; the discovery requested here serves the substantial governmental interest of allowing Faconnable to have a meaningful opportunity to vindicate its rights and recover any damages inflicted by the anonymous posters; and the subpoena is narrowly tailored to serve the government's interest without unnecessarily burdening the anonymous posters' First Amendment rights.

IT IS ORDERED:

1. The Motion for Protective Order [Doc. # 9] is DENIED;

2. Faconnable shall pay the reasonable and legitimate expenses associated with Skybeam's compliance with the subpoena; and

3. Skybeam shall comply with the commands of the subpoena at a date and time as the parties may agree, but not later than June 3, 2011.

Dated May 24, 2011.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge